UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MĀUI AND HECTOR'S DOLPHIN DEFENDERS NZ INC., <br><br> *Plaintiff,* <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al., <br><br> *Defendants,* <br><br> GOVERNMENT OF NEW ZEALAND, <br><br> *Intervenor-Defendant.* | Case No. 1:24-cv-00218-JCG <br><br> Before: Judge Jennifer Choe-Groves |

**OPPOSITION TO MOTION TO STAY PROCEEDINGS**

Plaintiff Māui and Hector's Dolphin Defenders NZ Inc. (MHDD) brought this case to compel a ban on the import of fish from two New Zealand fisheries that pose a dire risk to the most endangered marine dolphin in the world, the Māui dolphin. In January, Defendants National Marine Fisheries Service (NMFS) et al. agreed to a briefing schedule that would allow a swift resolution of the case. Defendants now ask to stay proceedings based on a settlement agreement in a different case that they signed *before* agreeing to the schedule in this case. Defendants identify no cognizable hardship from being required to proceed with briefing in this case, and certainly no reason for delay that they were not already aware of when entering the current schedule. Conversely, the requested stay would enable the continued importation from and support of New Zealand fisheries that kill Māui dolphins. The sooner an import ban is implemented, the sooner New Zealand will be compelled to implement necessary dolphin protections to access U.S. markets.

1

Defendants' only asserted basis for the stay is their conjecture that the issuance under the settlement agreement of a new comparability finding that an import ban is unwarranted for the New Zealand fisheries "*may* moot *some* or all of MHDD's claims," so judicial economy would be served by a stay. Mot. Stay Proc. 3, ECF No. 21 [hereinafter Stay Mot.] (emphasis added). A new comparability finding will not resolve the issues in this case. The United States will continue allowing seafood imports from two fisheries that harm and kill Māui dolphins in excess of substantive U.S. standards. And NMFS is likely to repeat the same unlawful and arbitrary errors in its new finding of comparability with U.S. standards, just as it did in 2020 and 2024. A stay would only postpone MHDD's ability to seek a remedy for the issues, all while Māui dolphins face a daily risk of death from fishing that supplies the U.S. import market. Defendants' speculation of judicial efficiency fails to meet their heavy burden to demonstrate that clear and convincing circumstances require a stay. The Court should deny their motion.

## BACKGROUND

This case concerns the critically endangered Māui dolphin. Compl. ¶¶ 62–64, ECF No. 4. Māui dolphins are found in the waters around New Zealand's North Island and are concentrated on its west coast. *Id.* ¶ 66. There are less than 50 mature individuals left in existence, *see* NMFS_004041, with some estimates as low as 30. Compl. ¶ 62. The Māui dolphin's population has experienced a 97.5% decline over the past 50 years, due in large part to its accidental capture and mortality in commercial set-net and trawl fisheries. Decl. of Elisabeth Slooten, Ph.D. ¶ 12 (filed herewith); NMFS_004359. The population continues to decline by an average of 3–4% per year. NMFS_001225; Slooten Decl. ¶ 12. Because of its imperiled status, NMFS has listed the Māui dolphin as endangered under the Endangered Species Act (ESA). 82 Fed. Reg. 43701 (Sep. 19, 2017). With such a small population, the death or serious injury of a single Māui dolphin could have devastating consequences. Slooten Decl. ¶ 13. Therefore, as long as set-net and trawl

fishing is allowed within the Māui dolphin's range, the species is at a significant risk of extinction. *Id.* ¶ 14.

The U.S. Marine Mammal Protection Act (MMPA) reduces fishing risks to marine mammals like Māui dolphins by requiring Defendants to ban the import of fish from any foreign fishery that harms marine mammals in excess of what would be permitted in the United States. 16 U.S.C. § 1371(a)(2) [hereinafter MMPA Import Provision] ("The Secretary of the Treasury shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards."). The MMPA Import Provision ensures that the United States does not contribute to the decline of a marine mammal species and provides assurances to American consumers and fishers that the fish brought to U.S. markets meets standards equivalent to those required in the United States. NMFS implements the MMPA Import Provision by determining whether there is reasonable proof that a fishery meets U.S. standards and, if so, issuing a "comparability finding" that allows imports from the fishery. 50 C.F.R. § 216.24(h)(6). Absent a valid comparability finding, imports from a fishery must be banned. *Id.* § 216.24(h)(1). A comparability finding is not "valid" if it is arbitrary and capricious or otherwise contrary to the statutory or regulatory requirements under the MMPA Import Provision. *See Sea Shepherd New Zealand v. United States*, 606 F. Supp. 3d 1286, 1323–25 & nn.60–63 (Ct. Int'l Trade 2022).

In 2022, the CIT found that NMFS's 2020 comparability finding for the New Zealand West Coast North Island set-net and trawl fisheries with respect to the Māui dolphin was likely unlawful in several respects and, accordingly, enjoined imports from the fisheries. *Id.* at 1286. Despite no meaningful improvement in New Zealand's protections for the dolphin, NMFS

subsequently issued a new comparability finding in 2024 [hereinafter 2024 Comparability Finding] to allow imports from the fisheries to resume. 89 Fed. Reg 4595 (Jan. 24, 2024); *see Sea Shepherd New Zealand v. United States*, 693 F. Supp. 3d 1364, 1367–68 (Ct. Int'l Trade 2024) (dissolving previous injunction, which was based on 2020 comparability finding, but noting order "does not preclude future legal challenges to [the] new comparability findings"). The 2024 Comparability Finding is valid through December 31, 2025. *See* 89 Fed. Reg. at 4595.

MHDD filed this challenge to the 2024 Comparability Finding on December 4, 2024, because the New Zealand West Coast North Island set-net and trawl fisheries do not substantively meet U.S. standards under the MMPA Import Provision and because NMFS's evaluations in the Comparability Finding are arbitrary and capricious and contrary to law. *See generally* Compl. MHDD seeks relief that includes an order compelling a ban on imports from the two fisheries. *Id.* at 37 (Prayer for Relief). On January 17, 2025, Defendants and MHDD submitted a joint stipulated briefing schedule, ECF No. 13, which the Court entered on January 24, 2025, ECF No. 14. Under that schedule, Defendants were required to file their answer by March 11, 2025, and, absent a need to brief a dispute about the administrative record, merits briefing will conclude by July 3, 2025. ECF No. 14.

Two days before Defendants entered the stipulated briefing schedule in this case, they entered into a settlement agreement with parties in a separate action, agreeing to "issue final comparability findings for all harvesting nations" on or before September 1, 2025. *See* Stip. Dismissal, Attach. A at 3, *Nat. Res. Def Council, Inc. v. Gina Raimondo* (*NRDC*), 24-00148 (Ct Int'l Trade Jan. 16, 2025) (ECF No. 29).[1] Defendants represent here that, pursuant to the

---

[1] Defendants in that case are the same as this case: NMFS, the United States Department of Commerce, the National Marine Fisheries Service, the United States Department of the Treasury, and the United States Department of Homeland Security.

4

agreement, NMFS "will issue a new comparability finding for New Zealand's West Coast North Island set-net and trawl fisheries." Stay Mot. 3.[2] Prior to the settlement agreement, NMFS was required to issue new or deny comparability findings for those fisheries by November 30, 2025, to allow or ban imports after the 2024 Comparability Finding expires on December 31, 2025; the settlement would advance that determination by three months. *See* 50 C.F.R. § 216.24(h)(6)(ii).

## ARGUMENT

While a court has discretion whether to enter a stay, "courts must weigh and maintain an even balance between competing interests when deciding whether a stay is appropriate." *Novolipetsk Steel Pub. Joint Stock Co. v. United States*, 474 F. Supp. 3d 1354, 1357 (Ct. Int'l Trade 2020). Defendants as the movants "bear[] the burden of establishing [their] need" for a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Defendants "must make out a clear case of hardship or inequity in being required to go forward" if "there is even a fair possibility that a stay will do damage to the opposing party." *Novolipetsk Steel*, 474 F. Supp. 3d at 1358 (cleaned up) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *accord Bldg. Sys. de Mexico, S.A. de C.V. v. United States*, 463 F. Supp. 3d 1344, 1348 (Ct. Int'l Trade 2020). A court "may also consider whether the stay promotes judicial economy." *Novolipetsk Steel*, 474 F. Supp. 3d at 1358. Defendants must do more than "merely attempt to show that no harm would result from the stay," and in the absence of "a strong showing that a stay is necessary, [Defendants'] request must fail." *Columbia Forest Prods. v. United States*, 352 F. Supp. 3d 1274, 1276 (Ct. Int'l Trade 2018).

---

[2] The statement that NMFS "will issue" a comparability finding for the fisheries demonstrates that NMFS has already determined that it will allow continued imports, because, for any fisheries that do not meet U.S. standards and thus will be subject to an import ban, NMFS will instead deny comparability findings. *See* Stip. Dismissal, Attach. A at 3–4, *NRDC*, 24-00148. It is unclear why NMFS needs to wait until September 1 before announcing that decision and prejudice MHDD by seeking to stay this litigation in the meantime.

Defendants have not met their burden. First, Defendants have offered no pressing need for a stay, much less any clear and convincing evidence of hardship or inequity. Second, a stay would prejudice MHDD and the imperiled Māui dolphin it seeks to protect by delaying a potential import ban. Third, judicial economy would be best served by resolving the issues currently teed up for briefing, rather than requiring MHDD to wait and file a new challenge to a forthcoming comparability finding that repeats the same errors. The Court should deny Defendants' motion.

**I.     Defendants Have Failed to Establish a Clear Case They Will Suffer Hardship if the Case Is Not Stayed.**

Defendants make no argument that they will suffer undue hardship or inequity by being required to proceed in this case. Nor could they, given that they were already aware of the settlement (signed January 15) and its September 1 deadline *before* they agreed to the briefing schedule in this case (filed January 17). If Defendants believed the settlement justified delaying briefing in this case, they should have raised that issue with MHDD and the Court when entering the briefing schedule in the first place. Instead, they waited several weeks to file the present stay motion. The motion presents no new reason or changed circumstance since January 17 to justify staying this case. Defendants only complain about the general duty to litigate. That is not sufficient.

Defendants "must make out a clear case of hardship or inequity in being required to go forward" because, as discussed below, there is at least a "fair possibility" that a stay will do damage to MHDD's interests. *Novolipetsk Steel*, 474 F. Supp. 3d at 1358 (quoting *Landis*, 299 U.S. at 255). Defendants fail to establish any clear case they will suffer hardship if this case proceeds. The only burden Defendants mention is the general duty of having to divert resources to litigation. Stay Mot. 3. However, "being required to defend a suit, without more, does not

6

constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *accord Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21–22 (D.D.C. 2019); *see also U.S. Liab. Ins. Co. v. Krawatsky*, No. 21-0538, 2022 WL 888885, at *13 (D. Md. Mar. 25, 2022) (explaining "the general duty to litigate … does not 'make out a clear case of hardship or inequity in being required to go forward'" (citation omitted)); *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1117 (C.D. Cal. 2015) (finding that it is well established that "diverting staff attention from other activities does not sufficiently satisfy the requirement of hardship or inequity"). Even if the duty to litigate were a cognizable burden, the procedural posture of this case belies any claim that the hardship is undue. Defendants have already produced the administrative record. Their answer was due by March 11. *See* ECF No. 14. All that remains (assuming there is no briefing on the completeness of the administrative record) is their summary judgment response brief. *See id.*

Defendants' suggestion (at Stay Mot. 3) that litigating this case could impede their ability to meet the September 1 deadline in the *NRDC* settlement agreement is not well taken. Defendants were fully aware of the need to litigate this case when they agreed to the September 1 date in the *NRDC* settlement. Defendants cannot now claim that the only way to meet that deadline is to pause this case.

Defendants have not established their need for a stay, much less a clear case of hardship or inequity with proceeding to summary judgment briefing. The Court should deny the motion on that basis alone.

**II.     A Stay Would Risk Harm to Endangered Māui Dolphins and Prejudice MHDD.**

The looming risk of catastrophic harm to Māui dolphins is front and center in this litigation. The death of just a single dolphin in a fishing net could accelerate the population to extinction. Slooten Decl. ¶¶ 13–14. Fishers are continuing to deploy set-nets and trawl nets in the

7

Māui dolphin's habitat at this very moment. *Id.* ¶ 15. Every day that passes without an import ban to compel a change in New Zealand's fishing policies exposes Māui dolphins to further risk. Defendants' requested stay would extend that risk of harm by allowing the set-net and trawl fisheries to continue accessing U.S. markets without any change in their dangerous practices. There is thus at least a "fair possibility" the stay would do damage to Māui dolphins and the interests MHDD seeks to protect in this litigation, so Defendants' burden to obtain a stay is heightened. *See Novolipetsk Steel*, 474 F. Supp. 3d at 1358.

Māui dolphins were already at risk when NMFS issued both the 2020 and 2024 Comparability Findings, but their circumstances have only worsened. In its 2022 preliminary injunction, the CIT found that continued imports to the United States pose a risk of imminent irreparable harm to Māui dolphins. *Sea Shepherd*, 606 F. Supp. 3d at 1326–29. Since then, there have been no changes to New Zealand's regulations for the Māui dolphin. Slooten Decl. ¶ 18; Decl. of Christine Rose ¶ 14. But the United States has been allowed to resume importing fish from the fisheries that catch the dolphins. The likelihood of irreparable harm the CIT found in 2022 not only persists today, but, in fact, has worsened. *See Sea Shepherd New Zealand v. United States*, 723 F. Supp. 3d 1374, 1381 (Ct. Int'l Trade 2024) (noting the Māui dolphin remains "teetering on the brink of extinction").

New Zealand continues to allow set-net and trawl fishing in large portions of the Māui dolphin's habitat. Slooten Decl. ¶ 15; Rose Decl. ¶ 7. This was already a legal problem for New Zealand's ability to meet U.S. standards under the 2024 Comparability Finding. *See* Compl. ¶¶ 117–23, 138–39. It is also an existential problem for the Māui dolphin. Late last year, NMFS found in its 5-Year Review of the Māui dolphin's status that the "greatest threat to Māui's dolphin is bycatch" from set-net and trawl fishing that is allowed in the dolphin's range. NMFS,

8

*Māui's dolphin (*Cephalorhynchus hectori maui*) and South Island Hector's dolphin (*Cephalorhynchus hectori hectori*) – 5-Year Review: Summary and Evaluation* 108 (2024), Slooten Decl. Ex. A. NMFS recommended "[i]mplementing fishing restrictions in harbor areas inhabited by Maui's … dolphins" and "[e]xtending fishing prohibitions out to the 100 m depth contour [the scientifically recommended extent of Māui dolphin's range] as recommended by the [International Union for the Conservation of Nature], [International Whaling Commission], the Society for Marine Mammalogy, and other international bodies and fora." *Id.* at 112.

Recent camera monitoring results indicate that bycatch in trawl fisheries for Māui dolphins and closely related Hector's dolphins had been substantially underestimated for the 2024 Comparability Finding. Slooten Decl. ¶¶ 20–22. These results show bycatch is happening at rates exceeding the predictions and data submitted in connection with the 2024 Comparability Finding. *Id.* ¶ 21.

Further, New Zealand has not been implementing its management measures to the extent expected when NMFS issued the 2024 Comparability Finding. The 2024 Comparability Finding (arbitrarily) assumes New Zealand's monitoring program meets U.S. standards and is sufficient to ensure the protection of the species. *See* Compl. ¶¶ 130–40. The 2024 Comparability Finding assumes human observer coverage would be 1–5% for the set-net fleet and 25–50% for the trawl fleet, NMFS_001254, but coverage was 0% in 2024, Slooten Decl. ¶ 24. In addition, the rollout of electronic monitoring has been only a portion of what was assumed in the 2024 Comparability Finding. *Id.* ¶¶ 19, 23. As a result, it is far less likely that the New Zealand Government can detect Māui dolphin mortality in the fisheries and take responsive action than previously believed.

9

A stay would enable the United States to continue supporting these fisheries' operations with dangerously inadequate protections, where there is no space for even one mistake when it comes to Māui dolphin bycatch. The timing of the stay is particularly problematic because the risk that dolphins get caught in nets increases significantly during the peak of the set-net and trawl fishing season from October to March. *Id.* ¶ 15. The current briefing schedule allows for a ruling on New Zealand's conformity with U.S. standards before then, which would incentivize the country to promptly apply necessary protections for the fisheries to resume access to U.S. markets. Rose Decl. ¶¶ 9–10. Conversely, a stay would allow fishing to ramp up during its peak in Māui dolphin habitat without concern that exports to the United States face imminent restrictions.

Aside from addressing ongoing harm to Māui dolphins, prompt resolution of this lawsuit would provide urgently needed information and guidance for the New Zealand Government to consider as it is currently reevaluating risks and protections for the Māui dolphin. The New Zealand Government has proposed weakening its fisheries conservation laws. Rose Decl. ¶ 15. An import ban resulting from this litigation is likely to influence whether the government follows through. *Id.* An import ban would also incentivize the New Zealand Government to complete its ongoing but slow-moving risk assessment process for Māui and Hector's dolphins and to expedite its review and update of the Threat Management Plan (TMP) for Maui and Hector's dolphins. *Id.* ¶¶ 16–17; Slooten Decl. ¶¶ 25–27. A ruling on whether New Zealand's current management meets U.S. standards would provide important information for those fisheries management updates. Rose Decl. ¶ 17. A stay, therefore, would frustrate MHDD's objectives of compelling stronger New Zealand management of Māui dolphins.

Courts routinely find that a risk of harm to an imperiled species demands denial of a stay. *E.g.*, *Ross*, 419 F. Supp. 3d at 18; *Conservation Council for Haw. v. NMFS*, 97 F. Supp. 3d 1210,

1232 (D. Haw. 2015); *Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 97 (D. Me. 2008); *Nat. Res. Def. Council v. Norton*, No. 05-01207, 2007 WL 14283, at *16 (E.D. Cal. Jan. 3, 2007). The Court should deny Defendants' request for a stay because they have shown "no compelling need for a stay," while "harm to a critically endangered species hangs in the balance." *Ross*, 419 F. Supp. 3d at 18.

Defendants argue there is only a risk of "ongoing harm to Māui dolphins" if "the new comparability finding will not moot plaintiff's claims." Stay Mot. 3. This makes no sense. The risk to Māui dolphins is from the United States' continued support of fisheries that catch and kill the animals, which can only be alleviated by an import ban. On-the-water harm does not depend on the justiciability of MHDD's legal claims.[3] Even if the principle of mootness were relevant, Defendants' speculation that a new comparability finding "*may* moot *some* or all of MHDD's claims," *id.* (emphasis added), is not only unfounded (as explained below at pp. 12–13), but does not negate the harm factor that weighs heavily against a stay. A stay creates an extended risk of harm to Māui dolphins, regardless of whether a new comparability finding were to moot some of MHDD's claims.

Next, Defendants essentially argue that continuing to litigate this case will have no effect because the Court is unlikely to issue a ruling much before the September 1, 2025 date for a new comparability finding. *Id.* at 4. Not so. A ruling would alert NMFS to how its comparability analysis is flawed and provide important guidance for how it must evaluate comparability in its forthcoming comparability finding so it does not repeat the errors. *See* pp. 13–14, *infra*

---

[3] Likewise, the existence of ongoing harm to Māui dolphins from U.S. and New Zealand policies is unaffected by MHDD's litigation choice of briefing this case to get a merits decision on a concise timeframe rather than moving for a preliminary injunction. *Contra* Stay Mot. 4 (asserting that choice undercuts existence of harm).

11

(explaining why a stay will allow NMFS to just repeat the same errors). More importantly, if this Court agrees that New Zealand's standards do not substantively meet the MMPA Import Provision—whether the ruling is issued before or after the new comparability finding—then the government will have to ban imports until New Zealand amends its policies, regardless of what the new comparability finding says. *See* Compl. ¶¶ 170–74. In addition, the forthcoming comparability finding will not take effect until January 1, 2026, *see* Stip. Dismissal, Attach. A at 3, *NRDC*, No. 24-00148 (citing 50 C.F.R. § 216.24(h)(8)(i), (9)), so a ruling vacating the 2024 Comparability Finding at any point before the end of this year would require at least a temporary import ban.

As long as the United States permits the import of fish from Māui dolphin habitat, there is no reason for the Government of New Zealand to change the status quo, a state of affairs which allows for the continued decline of the Māui dolphin population. Every day that the 2024 Comparability Finding is in place, is another day of inaction which subjects Māui dolphins to current, unacceptable risk. A prompt ruling that New Zealand does not meet U.S. standards would require New Zealand to implement new protective policies as soon as possible to have access to the U.S. market. Defendants' requested stay would postpone that relief.

**III.   A Stay Would Not Advance Judicial Economy.**

Staying this case would only produce delay and waste judicial and administrative resources, with another inevitable round of future litigation raising the same issues. Conversely, resolving the case on the current schedule could provide necessary guidance to ensure that NMFS does not repeat the same legal errors in the next comparability finding.

Defendants, for their part, claim that proceeding with this case would be a waste of resources because a new comparability finding in September "will supersede the 2024 finding, and may moot some or all of MHDD's claims." Stay Mot. 3. By using the term "may" in this

12

statement, Defendants recognize that there is no certainty that a new comparability finding would resolve any, much less all, of the claims raised in this case. "[S]peculative claims regarding the possible impact of a future decision on the disposition of the case at bar do not suffice to warrant a stay." *Bldg. Sys. de Mexico*, 463 F. Supp. 3d at 1348; *see also, e.g.*, *Alaska Wildlife All. v. Haaland*, No. 20-00209, 2022 WL 787989, at *5 (D. Alaska Mar. 15, 2022) (denying stay where there was "no guarantee that staying the case … will ultimately narrow the scope of this litigation").

Even if a new comparability finding supersedes the 2024 Comparability Finding, that does not make a stay the more efficient course of action. First, issuance of a new comparability finding *cannot* moot MHDD's third claim: that, independently from the comparability finding process, Defendants are required to ban imports from New Zealand's West Coast North Island set-net and trawl fisheries because they do not substantively meet the requirements of the MMPA Import Provision. *See* Compl. ¶¶ 170–74. Obtaining a prompt resolution of that claim would, if MHDD is successful, bring about an import ban that helps address the threat to Māui dolphins much sooner than if that claim were punted to a later proceeding. A new comparability finding is also unlikely to moot MHDD's challenges to the 2024 Comparability Finding itself. *See Sea Shepherd New Zealand v. United States*, 639 F. Supp. 3d 1367, 1378–83 (Ct. Int'l Trade 2023) (holding new comparability finding did not moot challenge to previous comparability finding).

Second, without a ruling on the pending case, the new comparability finding is likely to repeat many, if not all, of the same errors from the 2024 finding. MHDD has raised numerous ways in which NMFS could not rationally find that the fisheries are comparable to U.S. standards. *See generally* Compl. Nothing has changed in the fisheries' management since 2024. Slooten Decl. ¶ 18; Rose Decl. ¶¶ 13–15. So if NMFS again finds the fisheries *are* comparable to U.S. standards to allow continued imports, as it states it will (at Stay Mot. 3), then it will be

13

making the same errors, and MHDD will have to initiate a new challenge to that finding. Courts routinely deny stays in this situation, where there is uncertainty whether new agency action will address all of the issues in the litigation. *E.g.*, *Conservation Council for Haw.*, 97 F. Supp. 3d at 1231–32; *Ross*, 419 F. Supp. 3d at 22–23 (denying stay where new agency action "would not necessarily moot the issues in this case"); *All. for Wild Rockies v. Gassman*, 21-00105, 2022 WL 3030997, at *4 (D. Mont. Aug. 1, 2022) (finding stay "likely futile" because agency would address only one of multiple problems); *All. for the Wild Rockies v. Marten*, 200 F. Supp. 3d 1129, 1131 (D. Mont. 2016) (denying stay where new action "likely will not address Plaintiffs' claims"). Judicial economy is not served when a legal challenge is "merely being delayed, but not obviated." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1485 (10th Cir. 1983). Conversely, allowing the litigation to proceed to a merits ruling would promote efficiencies by giving NMFS a clear indication of what problems it must correct in a new comparability finding. *See, e.g.*, *Ariz. Yage Assembly v. Barr*, No. 20-03098, 2020 WL 5629833, at *8 (N.D. Cal. Sept. 21, 2020) ("If the plaintiffs' claims are ultimately meritless, resolution of this litigation will not affect the rulemaking. And if the plaintiffs' claims are ultimately correct, [the agency] will have the guidance of an additional judicial ruling indicating what is and is not required by [statute].").

      Given these realities, judicial economy is best served by moving forward to address these issues in the pending case.

## CONCLUSION

      NMFS has not carried its burden to demonstrate a clear and convincing need for a stay. Conversely, a stay would allow U.S. imports to continue supporting dangerous fishing practices that could cause a population-altering death of a Māui dolphin at any point. Allowing summary judgment briefing to continue so the Court may reach the merits will minimize harm from further

delay and foster judicial economy. MHDD accordingly asks this Court to deny NMFS's Motion to Stay Proceedings.

Respectfully submitted this 26th day of March, 2025.

/s/ Natalie Barefoot
Natalie Barefoot
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
T (415) 217-2000
nbarefoot@earthjustice.org

Sabrina Devereaux
Earthjustice
810 Third Ave., Suite 610
Seattle, WA 98104
T (206) 343-7340
sdevereaux@earthjustice.org

/s/ Brett Sommermeyer
Brett Sommermeyer
Catherine Pruett
Law of the Wild
7511 Greenwood Avenue North, #4214
Seattle, WA 98103
T (206) 774-0048
brett@lawofthewild.org
catherine@lawofthewild.org

*Attorneys for Plaintiff Māui and Hector's Dolphin Defenders NZ Inc.*

## CERTIFICATE OF COMPLIANCE

This document complies with the word count limitations as provided for in the Court's Standard Chambers Procedures 2(B) because it contains 4,610 words, excluding the parts of the brief exempted by Standard Chambers Procedures 2(B)(1)(c).

*/s/ Natalie Barefoot*
Natalie Barefoot
