## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| MĀUI AND HECTOR'S DOLPHIN DEFENDERS NZ, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 1:24-cv-00218-JCG |
| | ) | |
| NATIONAL MARINE FISHERIES SERVICE, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NEW ZEALAND GOVERNMENT, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## <u>ORDER</u>

Upon consideration of defendants' motion to dismiss for lack of jurisdiction, it is hereby

ORDERED that defendants' motion to dismiss is GRANTED; and it is further

ORDERED that the action is DISMISSED.

Dated: _____                    _____
        New York, N.Y.                                                    JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| MĀUI AND HECTOR'S DOLPHIN DEFENDERS NZ, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al., <br><br> Defendants, <br><br> and <br><br> New Zealand Government, <br><br> Defendant-Intervenor. | Court No. 1:24-cv-00218-JCG |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE
JUDGMENT AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)**

OF COUNSEL:
MARK HODOR
Office of the General Counsel
National Oceanic & Atmospheric Administration

ZACHARY SCOTT SIMMONS
Office of the Chief Counsel
U.S. Customs and Border Protection

DANIEL PAISLEY
Office of the General Counsel
Department of the Treasury

November 24, 2025

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

AGATHA KOPROWSKI
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 507-6081
Fax: (202) 353-0461
Email: agatha.koprowski@usdoj.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

Background..................................................................................................................1

   I.   Factual and Procedural Background.............................................................1

   II.  The Marine Mammal Protection Act...........................................................4

   III. The Administrative Procedure Act...............................................................5

Summary of the Argument.........................................................................................6

Argument....................................................................................................................7

   I.   The Action Should be Dismissed for Lack of Subject Matter Jurisdiction .......................7

      A. Standard of Review..............................................................................7

      B. MHDD Lacks Standing Because Its Claims Cannot Be Redressed by This Court..........9

      C. MHDD's Claim is Moot......................................................................15

   II.  MHDD's Motion Should Be Denied..........................................................18

      A. Standard of Review............................................................................18

      B. Rule 59(e) Does Not Apply Because There Is No Final Judgment .............................19

      C. No Extraordinary Circumstances Exist to Modify the Court's Previous Order............20

Conclusion................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akiachak Native Community v. U.S. Dep't of Int.*,
    827 F.3d 100 (D.C. Cir. 2016) ........................................................................... 15

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006) ........................................................................................... 8

*Camp v. Pitts*,
    411 U.S. 138 (1973) ........................................................................................... 16

*Can. Lumber Trade All. v. United States*,
    517 F.3d 1319 (Fed. Cir. 2008) ......................................................................... 9

*Cedars-Sinai Med. Ctr. v. Watkins*,
    11 F.3d 1573 (Fed. Cir. 1993) ........................................................................... 8

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ........................................................................................... 13

*City News & Novelty, Inc. v. City of Waukesha*,
    531 U.S. 278 (2001) ........................................................................................... 17

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................. 16

*Engage Learning, Inc. v. Salazar*,
    660 F.3d 1346 (Fed. Cir. 2011) ......................................................................... 7

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996) ........................................................................... 18

*Fla. Audubon Soc'y v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) ............................................................................. 9

*Ford Motor Co. v. United States*,
    30 C.I.T. 1587 (2006) ......................................................................................... 19

*Guardian Moving & Storage Co. v. United States*,
    122 Fed. Cl. 117 (2015) ..................................................................................... 16

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010)...................................................................................................8

*Hudson Furniture, Inc. v. Mizrahi,*
    No. 2022-1290, 2022 WL 16954854 (Fed. Cir. Nov. 16, 2022)..................... 19, 20

*In re Am. Rivers & Idaho Rivers United,*
    372 F.3d 413 (D.C. Cir. 2004)..............................................................6, 21

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945).............................................................................13

*Irwin Indus. Tool Co. v. United States,*
    269 F. Supp. 3d 1294 (Ct. Int'l Trade 2017).................................................19

*Keystone Auto. Operations, Inc. v. United States,*
    781 F. Supp. 3d 1362 (Ct. Int'l Trade 2025).................................................19

*Leidos v. Hellenic Republic,*
    881 F.3d 213 (D.C. Cir. 2018)..................................................................18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...............................................................8, 9, 10, 14

*Māui & Hector's Dolphin Defenders NZ Inc. v. Nat'l Marine Fisheries Serv.,*
    -- F. Supp. *3d --, No. 24-00218,*
    2025 WL 2452468 (Ct. Int'l Trade Aug. 26, 2025)........................................3, 20

*Nippon Steel Corp. v. Int'l Trade Comm'n,*
    345 F.3d 1379 (Fed. Cir. 2003) ................................................................21

*Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004)..................................................................................6

*Preiser v. Newkirk,*
    422 U.S. 395 (1975)..................................................................................9

*Public Utilities Comm'n of State of Cal. v. Fed. Energy Reg. Comm'n.,*
    100 F.3d 1451 (9th Cir. 1996) ...................................................................17

*Pueblo of Sandia v. Babbitt,*
    231 F.3d 878 (D.C. Cir. 2000)...................................................................19

*Qingdao Sea-Line Trading Co. v. United States,*
    766 F.3d 1378 (Fed. Cir. 2014) .................................................................16

*Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*,
   550 F.3d 1121 (Fed. Cir. 2008) ........................................................... 14

*Sea Shepherd New Zealand v. United States*,
   693 F. Supp. 3d 1364 (Ct. Int'l Trade 2024) ................................... 3, 15

*Sea Shepherd New Zealand v. United States*,
   606 F. Supp. 3d 1286 (Ct. Int'l Trade 2022) ......................................... 2

*Reynolds v. Army & Air Force Exch. Serv.*,
   846 F.2d 746 (Fed. Cir. 1988) .............................................................. 8

*Sheldon v. Sill*,
   8 How. 441 (1850) ............................................................................... 13

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ............................................................. 19, 20

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ................................................................................ 9

*Spencer v. Kemna*,
   523 U.S. 1 (1998) .................................................................................. 8

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................ 14

*Torrington Co. v. United States*,
   44 F.3d 1572 (Fed. Cir. 1995) ............................................................ 16

*Town of Portsmouth, R.I. v. Lewis*,
   813 F.3d 54 (1st Cir. 2016) ................................................................. 17

*U.S. Parol Comm'n v. Geraghty*,
   445 U.S. 388 (1980) .............................................................................. 9

*Wyoming v. Dep't of Agric.*,
   414 F.3d 1207 (10th Cir. 2005) .......................................................... 15

**Statutes**

5 U.S.C. § 551 ....................................................................................... 6
5 U.S.C. § 702 ....................................................................................... 5
5 U.S.C. § 706 ............................................................................... passim
16 U.S.C. § 1361 ................................................................................... 4
16 U.S.C. § 1371 .......................................................................... passim
16 U.S.C. § 1382 ................................................................................... 4

28 U.S.C. § 1581 ...................................................................................................5
42 U.S.C. § 2460 ...................................................................................................5

**Rules**

Fed. R. Civ. P. 54 ...............................................................................................18
Fed. R. Civ. P. 59 ...............................................................................................18
USCIT R. 12 ................................................................................................ passim
USCIT R. 54 .........................................................................................................18
USCIT R. 59 ...................................................................................................18, 19

**Regulations**

50 C.F.R. § 216.24 ...........................................................................................5, 15

 **Administrative Determination**


*Fish and Fish Product Import Provisions of the Marine Mammal Protection Act,*
    81 Fed. Reg. 54,390 (Dep't of Commerce Aug.  15, 2016)....................................4

*Notification of the Rejection of the Petition to Ban Imports of All Fish and Fish Products From*
    *New Zealand That Do Not Satisfy the Marine Mammal Protection Act,*
    84 Fed. Reg. 32,853 (July 10, 2019)..................................................................1

*Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection*
    *Act-Notification of Rejection of Petition and Issuance of Comparability Findings,*
    85 Fed. Reg. 71,297 (Nov. 9, 2020)....................................................................2

*Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection*
    *Act—Notification of Issuance of Comparability Findings,*
    89 Fed. Reg. 4,595, 4,596 (Dep't of Commerce Jan. 24, 2024).......................3, 13

*Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection*
    *Act—Notification of Comparability Findings and Implementation of Import Restrictions;*
    *Certification of Admissibility for Certain Fish Products,*
    90 Fed. Reg. 42,395, 42,398 (Dep't of Commerce Sept. 2, 2025)....................3, 15

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE
JUDGMENT AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)**

Defendants, the National Marine Fisheries Service (NMFS), the National Oceanic and
Atmospheric Administration, the United States Department of the Treasury, the United States
Department of Homeland Security, and the United States Department of Commerce, file this
opposition in response to the motion to alter or amend the judgment filed by plaintiff, Māui and
Hector's Dolphin Defenders NZ Inc. (MHDD) (Sept. 25, 2025), ECF No. 43 (Motion). For the
reasons below, MHDD's motion should be denied.

In addition, pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the Court
(USCIT R.), defendants respectfully request that the Court dismiss the action because MHDD
has not established that it has standing to pursue its claims and, even if it could have established
standing earlier in the litigation, because its claims are moot.

## BACKGROUND

I.  Factual and Procedural Background

On February 9, 2019, two environmental organizations (collectively Sea Shepherd)
submitted a petition to NMFS seeking emergency rulemaking banning the importation of all fish
and fish products sourced using fishing activities that resulted in the incidental kill or incidental
serious injury of Māui dolphins in excess of United States standards, as required by the Marine
Mammal Protection Act (MMPA), 16 U.S.C. § 1371(a)(2). NMFS denied Sea Shepherd's
petition because, under the MMPA's implementing regulations, the "Government of New
Zealand [wa]s implementing a regulatory program comparable in effectiveness to the United
States." *Notification of the Rejection of the Petition to Ban Imports of All Fish and Fish
Products From New Zealand That Do Not Satisfy the Marine Mammal Protection Act*, 84 Fed.
Reg. 32,853 (July 10, 2019).

Sea Shepherd subsequently filed a complaint in this Court alleging that the United States had unlawfully withheld agency action by failing to ban the importation of commercial fish in the Māui dolphin's range and that NMFS had acted arbitrarily by denying Sea Shepherd's petition. *See* Complaint, *Sea Shepherd New Zealand v. United States*, No. 20-112 (Ct. Int'l Trade May 21, 2020), ECF No. 1. On July 17, 2020, the United States moved for a remand to allow NMFS to determine whether to issue comparability findings for the Government of New Zealand based on then-recently enacted regulations. Defendants' Motion for Voluntary Remand, *Sea Shepherd*, No. 20-112 (Ct. Int'l Trade July 17, 2020), ECF No. 17. The remand resulted in another denial of Sea Shepherd's petition and the issuance of comparability findings for certain New Zealand fisheries, which were published in the Federal Register on November 9, 2020. *See Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act-Notification of Rejection of Petition and Issuance of Comparability Findings*, 85 Fed. Reg. 71,297 (Nov. 9, 2020).

Sea Shepherd amended its complaint and, on December 11, 2020, filed a motion for preliminary injunction. Motion for Preliminary Injunction, *Sea Shepherd*, No. 20-112 (Ct. Int'l Trade Dec. 11, 2020), ECF No. 49. On November 28, 2022, the Court issued a preliminary injunction banning the importation into the United States of certain fish and fish products from New Zealand's West Coast North Island commercial set-net and trawl fisheries operating within the Māui dolphin habitat. *Sea Shepherd New Zealand v. United States*, 606 F. Supp. 3d 1286 (Ct. Int'l Trade 2022) (*Sea Shepherd I*).

The Government of New Zealand subsequently provided additional evidence concerning the regulation of the fisheries subject to the *Sea Shepherd I* injunction and, on January 24, 2024, NMFS published new comparability findings for West coast, North Island multi-species set-net

2

fishery and the West coast, North Island multi-species trawl fishery in the Federal Register. *Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act—Notification of Issuance of Comparability Findings*, 89 Fed. Reg. 4,595 (Dep't of Commerce Jan. 24, 2024) (2024 Comparability Findings).

On April 1, 2024, the Court subsequently dissolved the *Sea Shepherd I* injunction. *Sea Shepherd New Zealand v. United States*, 693 F. Supp. 3d 1364, 1367-68 (Ct. Int'l Trade 2024) (*Sea Shepherd II*). The Court expressly concluded that the 2024 Comparability Findings "supersed[ed] the administrative actions underlying the preliminary injunction," but noted that its "opinion does not preclude future legal challenges to [NMFS]'s new comparability findings" or "suggest any view on those new comparability findings." *Id.* at 1367.

On December 4, 2024, MHDD filed its complaint challenging the 2024 Comparability Findings. Complaint (Dec. 4, 2024), ECF No. 1. Following cross-motions for judgment on the administrative record, the Court vacated the 2024 Comparability Findings and remanded them to NMFS for additional consideration, but the Court denied MHDD's request to enjoin the importation of fish and fish products from the relevant West coast, North Island fisheries. *Māui & Hector's Dolphin Defenders NZ Inc. v. Nat'l Marine Fisheries Serv.*, -- F. Supp. 3d --, No. 24-00218, 2025 WL 2452468, at *14 (Ct. Int'l Trade Aug. 26, 2025) (August 26 Order).

On September 2, 2025, NMFS published in the Federal Register comparability determinations for approximately 2,500 fisheries from 135 harvesting nations, including New Zealand fisheries that were the subject of the Court's August 26 Order. *Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act—Notification of Comparability Findings and Implementation of Import Restrictions; Certification of Admissibility for Certain Fish Products*, 90 Fed. Reg. 42,395, 42,398 (Dep't of Commerce

Sept. 2, 2025) (2025 Comparability Findings). The issuance on August 29, 2025, and subsequent publication in the Federal Register, of the 2025 Comparability Findings were required under the terms of a stipulated order issued by this Court in connection with separate litigation brought by unrelated parties pursuant to 5 U.S.C. § 706(1). *See* Stipulation of Dismissal at Attachment 1, *Natural Resources Defense Council v. Raimondo*, No. 24-00148, (Ct. Int'l Trade Jan. 16, 2025) (*NRDC*), ECF No. 29; Stipulated Order of Dismissal, *NRDC*, No. 24-00148, (Ct. Int'l Trade Mar. 25, 2025), ECF No. 39. *See also* Motion to Stay Proceedings at 2-3 (Mar. 5, 2025), ECF No. 21 (alerting the Court that the *NRDC* stipulation of dismissal would likely result in determinations rendering MHDD's claims moot in or around September 2025).

## II. The Marine Mammal Protection Act

The MMPA was enacted by Congress to protect marine mammals in danger of extinction or depletion as a result of human activities. 16 U.S.C. § 1361. Among other things, the MMPA directs the Secretary of the Treasury to ban imports of commercial fish that result in the incidental killing of marine mammals, "in excess of United States standards." *See id.* § 1371(a)(2). Congress empowered the Secretary of Commerce to "prescribe such regulations as are necessary and appropriate to carry out the purposes of" § 1371 and related provisions of the MMPA. *Id.* § 1382(a).

The authority to implement the MMPA has been delegated to NMFS. In 2016, NMFS promulgated regulations to implement these provisions of the MMPA. *See Fish and Fish Product Import Provisions of the Marine Mammal Protection Act*, 81 Fed. Reg. 54,390 (Dep't of Commerce Aug. 15, 2016) (MMPA Imports Rule). The MMPA Imports Rule requires that nations harvesting fish and fish products for export to the United States develop a regulatory program to address the incidental mortality and serious injury of marine mammals comparable in

effectiveness to the U.S. regulatory program for similar marine mammal stocks and similar fisheries or risk losing access to the U.S. market. *Id.* at 54,391.

The MMPA Imports Rule established a process for the Department of Commerce to determine whether a country's regulatory regime results in the protection of marine mammals comparable to the protections provided by the United States. *See* 50 C.F.R. § 216.24(h). In the absence of an agency determination that a foreign regulatory regime is not comparable in effectiveness to the U.S. regulatory regime—that is, a determination that the regime results in the incidental killing of marine mammals in excess of U.S. standards—there is no statutory basis for imposing an import ban under the MMPA. 16 U.S.C. § 1371(a)(2). *See also* 50 C.F.R. § 216.24(a)(i) (defining prohibited products as "any fish or fish products harvested in an exempt or export fishery for which a valid comparability finding is not in effect.") (emphasis added).

III.   <u>The Administrative Procedure Act</u>

This Court has exclusive jurisdiction over any civil action "aris[ing] out of any law of the United States providing for . . . embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." 28 U.S.C. § 1581(i). This Court reviews actions brought pursuant to § 1581(i) as provided in the Administrative Procedure Act (APA). *Id.* § 2460(e); 5 U.S.C. § 706. The APA establishes a private cause of action to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. A person identified in § 702 may seek a court to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), or to "hold unlawful and set aside" agency actions that are, among other things, "arbitrary, capricious . . . or otherwise not in accordance with law" or "unsupported by substantial evidence," *id.* § 706(2)(A), (E).

"Agency action" is defined at 5 U.S.C. § 551(13) as any agency "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." The Supreme Court has explained that such a "failure to act" is "properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004). The "primary purpose" of a writ to compel agency action unlawfully withheld or unreasonably delayed pursuant to 5 U.S.C. § 706(1) "is to ensure that an agency does not thwart [a relevant court's] jurisdiction by withholding a reviewable decision." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004).

## SUMMARY OF THE ARGUMENT

Article III of the U.S. Constitution requires that a person pursuing litigation present a live case or controversy at all stages of the litigation. MHDD cannot meet this requirement for two independent reasons. First, it cannot establish that the relief it seeks in this Court—an injunction prohibiting the importation of certain fish or fish products from New Zealand—would redress the injury it has alleged to its aesthetic, recreational, scientific, and other interests in marine mammal species, particularly the critically endangered Māui dolphin. Second, even assuming that its alleged injury could be addressed by this Court, the 2025 Comparability Findings superseded and replaced the 2024 Comparability Findings, rendering moot the challenge to the previous determinations brought by MHDD. While MHDD is free to challenge the 2025 Comparability Findings to the extent that it concludes that they are not in accordance with law or unsupported by substantial evidence, it has not done so. This Court cannot review a claim MHDD has not brought.

Accordingly, this Court lacks jurisdiction and the action should be dismissed pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of this Court.

6

Additionally, and in the alternative, the Court should deny MHDD's motion to alter or amend the judgment. MHDD has not established the existence of the extraordinary circumstances needed for the Court to reconsider its previous denial of MHDD's request for an injunction. Frustrated by the Court's correct determination that injunctive relief compelling agency action was not available in a suit governed by § 706(2), MHDD seeks a second bite at the apple following the publication of the 2025 Comparability Findings it knew were coming but insisted the Court not consider in ruling on the agency record. *See* Opposition to Motion to Stay Proceedings at 6 (Mar. 26, 2025), ECF No. 22.

Even were reconsideration appropriate—and it is not—there is no reason to order an import prohibition. NMFS has not acted in a manner to thwart the Court's jurisdiction by withholding action and the statutory prerequisite for prohibiting imports has not been established. NMFS has considered its statutory and regulatory obligations and, for at least the third time in five years, concluded that fish and fish products harvested in New Zealand's commercial fisheries have not been "caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards." 16 U.S.C. § 1371(a)(2). Absent an *agency* determination that the conditions identified in § 1371(a)(2) exist, there is no basis for this Court to issue an injunction banning the importation of New Zealand's fish or fish products. Accordingly, MHDD's Motion should be denied.

**ARGUMENT**

I.  <u>The Action Should be Dismissed for Lack of Subject Matter Jurisdiction</u>

     A.  <u>Standard of Review</u>

In deciding a motion to dismiss for lack of jurisdiction pursuant to USCIT R. 12(b)(1), the Court accepts as true all uncontroverted factual allegations in the complaint. *Engage*

*Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011) (analyzing identical Federal Rule of Civil Procedure). "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). MHDD bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). MHDD cannot rely on challenged jurisdictional allegations but "must support [its] allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). *See also* USCIT R. 12(h)(3).

Pursuant to Article III of the United States Constitution, a party bringing suit must possess a live case or controversy—that is, it "must have suffered, or be threatened with, [1] an actual injury [2] traceable to the defendant and [3] likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotation marks omitted). These "are not mere pleading requirements but rather an indispensable part" of plaintiffs' case and so plaintiffs bear the burden of proof to support each element "in the same way as any other matter . . . *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The possibility that the alleged injury will be redressed by a favorable decision must be "likely, as opposed to merely speculative." *Id.* (quotation marks omitted). When "a plaintiff's asserted injury arises from the [G]overnment's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed" than when the plaintiff is the intended object of the Government's action. *Id.* Specifically, MHDD must "adduce facts showing that" the choices of the third parties who are the object of the

Government's action "have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.*

Furthermore, an actual controversy must exist at all stages of review. *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). At the outset of litigation, a plaintiff must demonstrate its personal stake in the alleged claim to establish standing; the mootness doctrine requires that it retain that personal stake for the duration of the litigation. *U.S. Parol Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (referring to mootness as "the doctrine of standing set in a time frame"). A claim becomes moot when it "cease[s] to present a 'case or controversy' due to developments during litigation." *Can. Lumber Trade All. v. United States*, 517 F.3d 1319, 1338 (Fed. Cir. 2008).

      B.  <u>MHDD Lacks Standing Because Its Injury Cannot Be Redressed by This Court</u>

MHDD cannot establish standing to pursue its claims because its alleged injury cannot be redressed by this Court, and the action must be dismissed pursuant to USCIT R. 12(b)(1) and 12(h)(3).

"Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996). MHDD must then "show[] an injury to [itself] that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). The key concept is one of likelihood, as opposed to mere speculation. *Lujan*, 504 U.S. at 561. "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Simon*, 426 U.S. at 38. Because MHDD is not the intended object of any import prohibition, MHDD must "adduce facts showing that" the choices of the third parties who are the object of the

Government's action "have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562.

MHDD cannot demonstrate that a favorable judicial decision is likely to redress its alleged injuries. According to the complaint, "MHDD's members regularly visit the Māui dolphin's habitat along the West Coast of New Zealand's North Island and enjoy and benefit from the continued presence of the species for recreational, aesthetic, spiritual, artistic, cultural, commercial, scientific, and environmental purposes." Compl. ¶ 16. "During these coastal visits, members also search for other marine species, including common dolphins, fur seals (at sea and resting on beaches and rocks), penguins of various types, orcas, southern right and humpback whales, and other types of marine mammals and seabirds. All of these species are impacted by trawl and set-net fisheries on the West Coast of the North Island." *Id.* As alleged by MHDD, "[t]he ability of MHDD's members to pursue these interests hinges on the well-being of the Māui dolphin and other marine mammals, and on the health of the marine ecosystems on which the species depend." *Id.* ¶ 17.

The depletion of the Māui dolphin and other marine mammal populations is thus the proximate cause of the alleged injuries of MHDD's members—that is, the alleged loss of their recreational, scientific, environmental, and other enjoyment of these species. MHDD cannot produce any non-speculative evidence that a court order banning the importation of fish and fish products from set-net and trawl fisheries operating in the West Coast North Island of New Zealand would redress the alleged injury to their aesthetic and other interests in viewing Māui dolphins or other marine mammal species. The proposed relief MHDD seeks has *no* direct effect on the depletion of the populations of these important marine mammal species, as the fisheries purportedly leading to the depletion of the Māui dolphin and other species could and would

continue to operate notwithstanding the diminished access to the U.S. market. MHDD, therefore, lacks standing under Article III of the U.S. Constitution.

MHDD states in a conclusory manner that its "harms can only be remedied if the Court orders" the Government to "ensure that the U.S. seafood market does not encourage or sustain New Zealand fisheries that incidentally catch, injure, and kill Māui dolphins and other marine mammals." Compl. ¶¶ 19-20. But the lack of "encourage[ment]" from the U.S. market will have no specific effect on the efforts of MHDD's members to view, study, or otherwise enjoy Māui dolphins and other marine mammals. Rather, MHDD hopes that lack of access to the U.S. market will miraculously cause the Government of New Zealand to take some unspecified steps to regulate its set-net and trawl fisheries to better protect marine mammals in a general and ill-defined manner.

In filings with this Court, MHDD asserts in a conclusory manner that an import ban is "likely to compel the New Zealand government to improve protections" or at least "convince the government not to weaken protections." Declaration of Christine Rose in Support of Plaintiff's Motion for Summary Judgment ¶ 25 (Apr. 25, 2024), ECF No. 30-4 (Rose Decl.). As an initial matter, these are two different outcomes. Improvement of protections could, in theory, ameliorate any risk to the continued depletion of the Māui dolphin population and, under MHDD's theory, redress the alleged loss of its members' enjoyment of those vulnerable marine mammals if only MHDD could identify what those improvements would be and how they would work and produce evidence that such improvements are likely to result from an order of this Court.

Choosing not to weaken protections, on the other hand, is merely maintenance of the status quo. Even accepting at face value that the Government of New Zealand intended to

11

weaken protections, as MHDD alleges, Rose Decl. ¶ 25, one can only speculate whether the Government of New Zealand would proceed with those plans or whether, for example, New Zealand courts would uphold such weakened protections under applicable law irrespective of a U.S. impot prohibition, *cf., e.g.*, Plaintiff's Motion for Summary Judgment on Agency Record at 9 (Apr. 25, 2025), ECF No. 30 (noting that a New Zealand court recently ruled that the Government of New Zealand's approach to protected species management was unlawful). If New Zealand policies on fisheries management remain the same, notwithstanding the lack of access to the U.S. market, it is not even clear what MHDD theorizes would redress its alleged injury.

In any event, MHDD has not provided competent proof in support of its bald assertion that an import prohibition would engender any action from the Government of New Zealand, much less outline how such action would succeed. Indeed, other statements from MHDD suggest that the Government of New Zealand would not change its policies irrespective of the outcome in this litigation. *E.g. id.* ¶ 11 (asserting that the Minister of Fisheries was reported as stating "I'm not doing another bloody thing for these dolphins"); ¶ 25 (representing that the current Minister of Fisheries has denied the existence of the Māui dolphin as a separate species).[1]

The history of the litigation concerning NMFS's comparability findings of the fisheries subject to MHDD's challenge likewise underscores the rank speculation on which MHDD bases its theory of redressability. On November 28, 2022, this Court in *Sea Shepherd I* enjoined the

---

[1] The United States does not intend to suggest that the Government of New Zealand could not or would not *choose* to increase marine mammal protection in response to any action taken by NMFS or this Court. Nor does the United States intend to suggest that the hearsay submitted by MHDD is reliable evidence of New Zealand's official positions. Any action undertaken by the Government of New Zealand to manage its fisheries is a matter exclusively within its sole sovereign discretion and cannot be dictated or demanded by the U.S. Government or by the Court.

agency's comparability finding and ordered an immediate ban of nine species of fish caught in New Zealand's West Coast North Island inshore trawl fishery, West Coast North Island inshore set net fishery, and West Coast North Island multi-species set-net and trawl fisheries. Further Order on Plaintiffs' Motion for Preliminary Injunction, *Sea Shepherd New Zealand v. United States*, No. 20-cv-112 (Ct. Int'l Trade Nov. 28, 2022), ECF No. 109. This import ban did not prompt the action MHDD now confidently predicts would occur in response to an import ban issued by this Court. MHDD admits that, despite the *Sea Shepherd I* ban, the Government of New Zealand made *no* regulatory changes to the affected fisheries prior to the January 2024 issuance of the comparability findings prompting this litigation. Rose Decl. ¶ 24 ("MHDD was not aware of any changes in protections instituted by the New Zealand government for Māui and Hector's dolphins [between 2020 and January 2024] that would warrant NMFS's issuance of the new finding."). Instead, the Government of New Zealand provided additional evidence in support of its existing regulations, providing a sufficient basis for NMFS to conclude, in its expert view, that a comparability finding was warranted. 2024 Comparability Findings, 89 Fed. Reg. at 4,596.

MHDD provides no evidence that a renewed import ban would have any different effect. Neither § 706(1) nor § 706(2) empowers this Court to order the Government of New Zealand, a sovereign nation, to take any action with respect to the regulations of its commercial fisheries. *Cf.* 5 U.S.C. § 706 (limiting the court's reviewing authority to "compel[ling] agency action" and "hold[ing] unlawful and set[ting] aside" final actions taken by U.S. government agencies under certain conditions); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("Courts created by statute can have no jurisdiction but such as the statute confers.") (quoting *Sheldon v. Sill*, 8 How. 441, 449 (1850)). And those fisheries operating entirely within the

13

territory of a foreign sovereign are neither before this Court nor within the outer bounds of its jurisdiction. *Cf. Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945) (holding that due process requires that a defendant have "certain minimum contacts with [the territory of the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'").

MHDD cannot rescue its claim by characterizing its harm as a procedural injury. *See, e.g.*, *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1131 (Fed. Cir. 2008) (explaining that procedural rights "can be asserted 'without meeting all the normal standards for redressability and immediacy,' as long as 'the procedures in question are designed to protect some threatened concrete interest of [the plaintiff] that is the ultimate basis of his standing.'") (quoting *Lujan*, 504 U.S. at 572 n.7, 573 n.8) (alteration in original). Even if Congress intended a party like MHDD—a foreign entity with no apparent connection to the United States—to have standing under the APA to assert a procedural injury arising from an agency's alleged failure to adequately explain a final agency determination, MHDD's claim would still fail because the explanatory requirements of the APA are not designed to protect aesthetic, recreational, scientific or other interests of foreign persons in marine mammal species. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

This disconnect between the Court's powers and any subsequent regulatory, policy, or other changes that would need to be undertaken by New Zealand (and complied with by foreign fishers and other relevant parties) is fatal to MHDD's theory of redressability. *See, e.g.*, *Lujan*, 504 U.S. at 561. And MHDD's wish-casting that somehow this time will be different does not

14

constitute competent proof. Accordingly, MHDD lacks standing and its complaint must
be dismissed.

      C.  <u>MHDD's Claim is Moot</u>

     Additionally, and in the alternative, MHDD's claims are now moot. On September 2,
2025, new comparability findings for all fisheries on the List of Foreign Fisheries, including
those of New Zealand, were published in the Federal Register. 2025 Comparability Findings,
90 Fed. Reg. 42,395. "[A] comparability finding shall remain valid for 4 years from publication
or for such other period as the Assistant Administrator may specify." 50 C.F.R.
§ 216.24(h)(8)(iv). The 2025 Comparability Findings thus revised and superseded the
2024 Comparability Findings, mooting the action before this Court. *See, e.g.*, *Akiachak Native
Community v. U.S. Dep't of Interior*, 827 F.3d 100, 112 (D.C. Cir. 2016) (subsequent agency
action replacing a prior agency action moots a challenge brought against the first action
under the APA); *Wyoming v. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (same); *Sea
Shepherd II*, 693 F. Supp. 3d at 1367 (same).

     The 2025 Comparability Findings have not been challenged in the complaint and are not
currently before it. These 2025 Comparability Findings are based on an overlapping—but
distinct—agency record that MHDD has not seen and this Court has not reviewed. *See, e.g.*,
Marine Mammal Protection Act Import Provisions Comparability Finding Application Final
Report: New Zealand at 1 n.1 (NOAA Fisheries), *available at* https://www.fisheries.noaa.gov/
international-affairs/2025-marine-mammal-protection-act-comparability-finding-determinations
(last visited Nov. 17, 2025) ("NMFS's current [2025] determinations about New Zealand's
Export and Exempt fisheries are based on an extensive record that is made up of, among other
things, New Zealand's initial application and supporting materials, supplemental material
provided to NMFS in response to past litigation, NMFS's 2020 and 2024 Comparability

Findings, and other readily available information."); *id.* at 30 (referencing information confirmed by New Zealand in May 2025).

If, as MHDD asserts, the 2025 Comparability Findings suffer from the same defects the Court determined necessitated a remand of the 2024 Comparability Findings, the proper step would be to file a complaint directly challenging the new findings and developing appropriate arguments. But this Court cannot adjudicate a challenge to a final agency action based on the administrative record compiled for a separate agency action, even one relating to the same general subject matter. *Cf. Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying [an arbitrary and capricious] standard [of review], the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("[E]ach administrative review is a separate exercise of [the agency's anti-dumping statutory] authority that allows for different conclusions based on different facts in the record."); *Guardian Moving & Storage Co. v. United States*, 122 Fed. Cl. 117, 132 (2015) ("[E]ach procurement must stand or fall on its own administrative record.").

No exception to the mootness doctrine applies. In "exceptional situation[s]," a claim that is capable of repetition, yet evading review, may not be mooted. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). "To qualify for this exception, the challenged action must meet two conditions. First, the action must in its duration be too short to be fully litigated prior to its cessation or expiration. Second, there must be a reasonable likelihood that the party will again suffer the [injury] that gave rise to the suit." *Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995) (cleaned up).

MHDD cannot establish that the 2024 Comparability Findings were so short in duration as to be fully litigated. The 2024 Comparability Findings were issued in January 2024, but MHDD did not initiate this litigation for nearly a year, in December 2024. Its claims were fully briefed, argued, and decided on the administrative record within approximately nine months. As the 2024 Comparability Findings were in effect for nearly two years before replaced, this was more than enough time to have sought and obtained review.

MHDD also cannot establish that its injury is likely to occur again because the Court's previous order could never really redress it. MHDD's problem is that its alleged injury was not proximately caused by NMFS's failure to adequately explain its 2024 Comparability Findings. Regardless of whether the 2025 Comparability Findings suffer from the same explanatory defects as the 2024 Comparability Findings, lack substantial record support, or are otherwise legally deficient, MHDD's alleged injury remains outstanding because the harm to its aesthetic, recreational, scientific, and other interests in marine mammals is directly caused by the use of fishing technologies in New Zealand, not the sufficiency of the record supporting a U.S. Government agency's determination.

The voluntary cessation exception to mootness also does not apply. This exception is rooted in "the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). When an allegedly unlawful agency action is revisited for reasons outside of litigation, the voluntary cessation exception cannot apply. *See, e.g.*, *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016); *Public Utilities Comm'n of State of Cal. v. Fed. Energy Reg. Comm'n.*, 100 F.3d 1451, 1460 (9th Cir. 1996). The 2025 Comparability Findings were not issued in response to this litigation. Rather, these

17

determinations were part of a global implementation of the MMPA Import Rule and, under a Court-ordered timeline, required to be submitted to the Federal Register for publication on or before September 1, 2025. *See generally* Motion to Stay Proceedings (Mar. 5, 2025), ECF No. 21; Stipulation of Dismissal at Attachment 1, *NRDC*; Stipulated Order of Dismissal, *NRDC*, No. 24-00148, (Ct. Int'l Trade Mar. 25, 2025), ECF No. 39.

Accordingly, because no exception applies, MHDD's claims challenging the 2024 Comparability Findings are moot and its complaint should be dismissed.

## II.   MHDD's Motion Should Be Denied

### A.   Standard of Review

A motion to alter or amend a final judgment is governed by Rule 59(e) of the Rules of the Court, which is substantively identical to the parallel Federal Rule of Civil Procedure. *Compare* USCIT R. 59(e) (requiring a motion to alter or amend a judgment be served no later than 30 days after its entry) *with* Fed. R. Civ. P. 59(e) (requiring a motion to alter or amend a judgment be served no later than 28 days after its entry). Rule 59(e) provides a limited exception to the finality of judgments and is considered an extraordinary remedy. *Leidos v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).

The decision to grant or deny a motion under Rule 59(e) rests within the discretion of the Court, but a Rule 59(e) motion generally should not be granted unless the movant has demonstrated "(1) [that] there is an 'intervening change of controlling law'; (2) [that] new evidence becomes available; or (3) [that] the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)).

Rule 54(b) of the Rules of this Court provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

18

the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." USCIT R. 54(b). *See also* Fed. R. Civ. P. 54(b) (same). Although reconsideration of an interlocutory order is not subject to the strict standard that applies to motions to alter or amend a judgment pursuant to Rule 59(e), modifying a previous order is nonetheless an extraordinary remedy that should be issued sparingly. *See, e.g.*, *Ford Motor Co. v. United States*, 30 C.I.T. 1587, 1588 (2006).

"The standard for granting a motion for reconsideration is high, 'and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 WL 16954854, at *2 (Fed. Cir. Nov. 16, 2022) (interpreting parallel rule under the Federal Rules of Civil Procedure and quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Disagreement with the court's determinations, without more, is not sufficient cause for reconsideration." *Irwin Indus. Tool Co. v. United States*, 269 F. Supp. 3d 1294, 1301 (Ct. Int'l Trade 2017). Rather, "grounds for reconsideration include 'an intervening change in the controlling law, the availability of new evidence, the need to correct a clear factual or legal error, or the need to prevent manifest injustice.'" *Keystone Auto. Operations, Inc. v. United States*, 781 F. Supp. 3d 1362, 1366 (Ct. Int'l Trade 2025) (quoting *Ford*, 30 C.I.T. at 1588).

B. <u>Rule 59(e) Does Not Apply Because There Is No Final Judgment</u>

"It is well settled that, as a general rule, a district court order remanding a case to an agency for significant further proceedings is not final." *Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 880 (D.C. Cir. 2000) (quotation marks omitted). The Court's August 26 Order vacating the 2024 Comparability Findings and directing NMFS to reconsider and reissue new determinations

on comparability is a remand for significant further proceedings that must be undertaken by the agency. It is thus not a final judgment.[2]

Because the remand order does not constitute a final judgment, MHDD's motion is governed by Rule 54(b).

C.  No Extraordinary Circumstances Exist to Modify the Court's Previous Order

MHDD cites no extraordinary circumstances to justify amending the Court's previous denial of its request for injunctive relief.

As the Court correctly determined, this case concerns a final agency action and is thus governed by § 706(2) and not § 706(1). *Māui & Hector's Dolphins Defenders*, 2025 WL 2452468, at *13. The Court considered whether vacatur of the 2024 Comparability Findings required that the Court order that the Government immediately enter an import ban, consistent with the requirement that fish and fish products from fisheries without a valid comparability finding in effect are prohibited from importation under the MMPA Import Rule. *Id.*; 16 U.S.C. § 1371(a)(2). The Court rejected that view. *Māui & Hector's Dolphins Defenders*, 2025 WL 2452468, at *14.

MHDD offers no basis, other than its disagreement with NMFS's decision in the 2025 Comparability Findings, that any different rule applies to importation now, so it cannot meet the high bar required for reconsideration. *Hudson Furniture*, 2022 WL 16954854, at *2; *Shrader*, 70 F.3d at 257. If the 2025 Comparability Findings suffer from the same defects that the Court previously identified with respect to the 2024 Comparability Findings, then MHDD is welcome to challenge the 2025 Comparability Findings on the merits. Admittedly, the

---

[2] NMFS is in the process of undertaking any and all actions needed to comply with this Court's August 25 Order.

2025 Comparability Findings did not take into account the Court's reasoning in its August 26 Order because NMFS was required to substantially complete them beforehand to submit them to the Federal Register for publication just after the August 26 Order—along with approximately 2,500 other comparability determinations—in order to meet the deadline in the *NRDC* Order. *See* NOAA Fisheries, *Seafood Import Prohibitions under the Marine Mammal Protection Act Import Provisions* (last updated Oct. 1, 2025), *available at* https://www.fisheries.noaa.gov/foreign/ marine-mammal-protection/seafood-import-prohibitions-under-marine-mammal-protection-act ("On August 29, 2025, NOAA Fisheries announced in the Federal Register its 2025 comparability finding determinations under the Marine Mammal Protection Act Import Provisions.").  Despite this, it is notable that the 2025 Comparability Findings are significantly longer and more detailed than the 2024 Comparability Findings that the Court determined required additional explanation. It is thus evidently inaccurate to conclude that the 2025 Comparability Findings are simply a regurgitation of the 2024 Comparability Findings reviewed previously by this Court.

Further, the 2025 Comparability Findings now constitute valid comparability findings under the MMPA Import Rule. There is no regulatory or statutory basis to initiate an import ban. To order otherwise, the Court would need to engage in its own fact-finding that the fisheries at issue *do* result in incidental take of marine mammals in excess of U.S. standards under the MMPA. This would exceed the Court's authority and usurp the agency's role under the statute. *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 82 (Fed. Cir. 2003) (by engaging in fact finding delegated to the agency rather than remanding, the Court of International Trade exceeded its authority and "despite its very fine opinions and analysis, went beyond its statutorily-assigned role to 'review'"). When the Court has jurisdiction to review the

substance of a final agency action, any injunctive relief pursuant to § 706(1) would be contrary to that provision's "primary purpose." *Am. Rivers*, 372 F.3d at 419. Rather than engage in *ultra vires* fact-finding, the Court has authority to review the substance of the 2025 Comparability Findings pursuant to § 706(2), but no party currently before it has asked that it do so.

Under these circumstances, even if they could be considered extraordinary and warrant reconsideration (which they are not), there is no basis under either the statute or the regulations to impose an importation ban. MHDD's Motion should, therefore, be denied.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction or, in the alternative, deny MHDD's Motion.

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

OF COUNSEL:
MARK HODOR
Office of the General Counsel
National Oceanic & Atmospheric Administration

ZACHARY SCOTT SIMMONS
Office of the Chief Counsel
U.S. Customs and Border Protection

DANIEL PAISLEY
Office of the General Counsel
Department of the Treasury

November 24, 2025

/s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

/s/Agatha Koprowski
AGATHA KOPROWSKI
Trial Attorney
U.S. Department of Justice Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 507-6081
Fax: (202) 353-0461
Email: agatha.koprowski@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this Response in Opposition to Plaintiff's Motion to Alter or Amend the Judgment and Motion to Dismiss Pursuant to Rule 12(b)(1)contains 6,685 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/Agatha Koprowski